## Combs v. Southern Bell Telephone & Telegraph Company.

### (Two Cases.)

(Decided March 3, 1931.)

(As Modified on Denial of Rehearing May 12, 1931.)

342

HENRY L. SPENCER for appellants.

O. H. POLLARD for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Affirming.

An action was instituted by S. L. Combs as jailer of Breathitt county against the appellee to recover damages for an alleged breach of contract and negligence and willful acts on the part of the employee of the appellee.

An action was instituted by Lewis Combs as deputy jailer, to recover on the same state of facts. By agreement they are to be heard and tried together as one action. We shall consider the action of S. L. Combs,

with the understanding that its determination shall apply to both.

S. L. Combs, on the 25th day of December, 1925, was the duly elected and acting jailer of Breathitt county. Immediately after taking his office, there was installed by the appellee in the jail of Breathitt county a telephone for his use as jailer. He alleges that he entered into a contract with the appellee by the terms of which he agreed to pay to it a monthly rental for the use of the telephone, that it agreed to keep the telephone in operation at all times, and to keep employees in charge of its central station by whom all calls made over his telephone should be properly and speedily handled.

Chester Fugate was in the Breathitt circuit court charged with the crime of willful murder, and confined in the county jail of Breathitt county under order duly entered of record, and he was thereby placed in the custody of the appellant as jailer of Breathitt county. He alleges that this contract was in full force and effect, and while Fugate was so confined in jail and in his custody a raid was made upon the jail by a crowd of masked persons. Fugate was forcibly taken by this crowd of masked persons from the jail and appellant's custody about 2 a. m. on the 25th day of December, 1929. He states in his petition that, for more than an hour after Fugate was taken from his custody, his deputy rang the telephone in the jail at least twenty-five times in order to get the exchange to connect him with the sheriff, county judge, commonwealth's attorney, circuit judge, and other officers and persons, to summon them to the jail to assist him and his deputy in recovering and taking from the mob his prisoner and to restore him to his cell in the jail; after ringing at least six times, his deputy untied and released appellant S. L. Combs; that for one hour after he was released he and his deputy alternately and continuously rang the telephone for the purpose of communicating with such officers and persons in order to get aid to pursue the mob, and, after many persistent efforts, the appellee's servant connected his telephone with C. J. Sewell, Charles Hatton, and Irvine Turner, but by its employee at the central office was abruptly, without excuse, disconnected, and failed and refused to answer his telephone, or to give him connection with such officers and persons in whose residences there were at the time installed telephones and in use. In his pleading

he further alleges that for several days thereafter the appellee, its agents, servants, and employees at its telephone exchange, publicly stated to the mayor of the town and others generally, that the central office was not rung by any telephone in the town of Jackson on the night of December 25, 1929; that no calls or connections were made with any telephone after midnight that day. As a part of his cause of action, he alleges that such report of the appellee's agent was false and untrue, and that by reason thereof the grand jury was immediately called to investigate "the said affair," resulting in an indictment against him, charging him with the crime of aiding and abetting the mob in the killing of Chester Fugate. He alleges the facts as we have stated them from his petition constitute. gross negligence and carelessness, willful misconduct, and breach of duty of the appellee and its employees. Subsequently he filed an amended petition wherein he alleges that the employee of appellee in charge of its central office on the night in question had been in the employment of appellee for six to ten years, but she had become sick and her mind impaired, and was mentally incompetent to perform the duties required of her at the central office, and by reason thereof she was discharged by appellee, but with knowledge thereof the appellee again employed her and placed her in charge of the central office, and she was in charge thereof on the night in question.

By third amended petition he alleges that he, the sheriff, county judge, commonwealth's attorney, and circuit judge had with the appellee "a general patron's contract" for telephone service and that they were at home where a telephone was installed by appellee. He alleges in his original petition that he fully kept and performed his contract with the appellee and paid all rentals promptly every time they were demanded of him for the use of the telephone, and that these officials and other persons would have come to his aid "in said catastrophe," and that they could and would have pursued the mob and recovered from it the said Chester Fugate, and "would and could have prevented said crime." We find this allegation in the third amended petition:

"And by reason of the negligent failure of appellee's employee to respond to the calls, the ring-

ing of the telephone in the central office and to connect same to the telephone of the officials aforesaid, he was left stranded, overpowered and tied by the mob of masked persons, and suffered great physical pain and anguish for not having the advice, service, assistance and consolation of said officials in said disastrous occurrence."

We have given a fair resume of the allegations of appellant's petition and amended petitions, from which it will be observed he seeks to recover damages (1) because the prisoner was rescued by the mob from the jail of Breathitt county, then in his custody as jailer; (2) that he suffered great mental and physical pain from not having the advice, assistance, services, and consolation of certain officials; (3) he was indicted and thereby caused to expend over $1,400—all by reason of the breach of the alleged contract he had at the time with the appellee to furnish him at the jail the ordinary telephone service ordinarily expected and required by the average patron of the telephone company and by reason of the negligent and willful acts of its employee.

The trial court sustained a demurrer to the petition as amended. From this ruling appellant appeals.

At the outset we are prepared to say that, from the experiences described by him in his pleadings, he at least was entitled to the compassion and consolation of a good Samaritan at the time he "was standed and tied in his own jail," but we are not convinced that the facts stated in his pleadings entitled him to compensation therefor at the hands of the telephone company.

The alleged failure of appellee's agent to connect appellant's telephone with that of others cannot be said to be the proximate cause of the damages sought. Evans' Adm'r v. Cumberland Tel. & Telg. Co., 135 Ky. 66, 121 S. W. 959, 135 Am. St. Rep. 444.

In regard to the allegation that appellee's employee disseminated news generally that no telephone call came from the jail that night, it is not alleged that she was acting in line or within the scope of her duty at the time it is alleged she made the damaging statements complained of.

At common law and in a majority of the states at the present time, compensatory damages for mental

anguish, unaccompanied by physical injury is not an element of damage for breach of contract. We have departed from this rule, and have awarded compensatory damages for breach of contract to transmit a message whereby one is deprived of being present at the bedside of a near relative before death, or from attending the funeral after death, which is a departure from the doctrine of the common law. A departure and further step from this common-law rule is made in a case where a wife or children, by reason of a failure to deliver a message, suffered mental and physical anguish under circumstances which were regarded as the natural consequences of the failure, or the proximate result of the failure to deliver the particular message. For recovery of damages for failure to deliver certain social messages, damages may be recovered for mental anguish. Postal Tel. & Cable Co. v. Terrell, 124 Ky. 822, 100 S. W. 292, 30 Ky. Law Rep. 1023, 14 L. R. A. (N. S.) 927; Thurman v. Western Union Tel. Co., 127 Ky. 137, 105 S. W. 155, 32 Ky. Law Rep. 26, 14 L. R. A. (N. S.) 499; Chapman v. Western Union Tel. Co., 90 Ky. 265, 13 S. W. 880, 12 Ky. Law Rep. 265.

In Robinson v. Western Union Tel. Co., 68 S. W. 656, 24 Ky. Law Rep. 452, 57 L. R. A. 611, we held that no recovery for mental anguish suffered by reason of the failure to transmit and deliver a message for money could be had.

However, we have not applied the doctrine further than to the class of cases referred to, and then the liability has been restricted to those of the first degree of relationship. Western Union Tel. Co. v. Melvin, 175 Ky. 480, 194 S. W. 563.

The general rule is, in actions for breach of contract, damages for mental suffering caused by the breach are not recoverable. The measure of recovery in an action for breach of contract or failure to deliver a message by telephone or telegraph relating to business is subject to the law applicable to other business transactions. The damages in such case must be approximately certain and a necessary result of the breach; they must not be conjectural or speculative. Evans' Adm'r v. Cumberland Tel. & Telg. Co., supra. Accepting the allegations of the petition as true, which must be done on a demurrer, even with the appellant's telephone connected with that of the officials and other per-

sons, they might have failed to respond or comply with his request. Chapman v. W. U. Tel. Co., supra; Smith v. Western Union Tel. Co., 83 Ky. 104, 4 Am. St. Rep. 126; Taliferro v. Western U. Tel. Co., 54 S. W. 825, 21 Ky. Law Rep. 1290, and Evans' Adm'r v. Cumberland Tel & Telg. Co., supra.

The allegations in the petition that the appellee's employees negligently failed to give telephone connection to the appellant does not help his cause of action. The negligence complained of must be the natural proximate cause of the damages which result therefrom. Lebanon, Lou. & Lex. Tel. Co. v. Lanham Lumber Co., 131 Ky. 718, 115 S. W. 824, 21 L. R. A. (N. S.) 115, 18 Ann. Cas. 1066. The appellant, by reason of appellee's agent failing to give telephone services, received no personal injury, and the mental suffering complained of by him cannot be regarded as the natural and proximate result of the alleged breach of contract, or of the negligence of the appellee's employee in charge of its exchange. Nor was the indictment of the appellee by the grand jury the proximate result of the publication relating to the appellant of which he complains. His allegation in this regard, if it constitutes a cause of action is in the nature of a cause of action for malicious prosecution. It is not alleged that the appellee's agent appeared before the grand jury or procured the indictment, or had any connection therewith. Chesapeake & O. R. Co. v. Van Hoose, 212 Ky. 259, 278 S. W. 552, and cases cited.

Even if his allegations be taken as true, relating to his indictment and the prosecution against him, waiving the question of the insufficiency of the allegations in that it is not alleged that the employee was acting within the scope of her duty and in furtherance of the business of the appellee at the time it is alleged she made the statement, he not only fails in his pleading to allege that she appeared before the grand jury to indict him for suffering and permitting the prisoner to escape, but he fails to allege that she acted maliciously and that he was indicted without probable cause Bazzell v. I. C. R. Co. 203 Ky. 626, 262 S. W. 966; Triangle Motors Co. v. Smith, 216 Ky. 479, 287 S. W. 914.

Wherefore the judgment is affirmed in each case.